UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ERIC DONNELL SAUNDERS, #53095

        Petitioner,

v.

COMMONWEALTH OF VIRGINIA,

        Respondent.

Case No.: 2:21cv575

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Petitioner Eric Donnell Saunders's ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus (the "Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent the Commonwealth of Virginia's ("Respondent") Motion to Dismiss, ECF No. 9. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 9, be **GRANTED**, and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. PROCEDURAL BACKGROUND

As explained by the Supreme Court of Virginia, the Petition arises out of the following set of facts:

Petitioner was convicted in 1990 of sodomy, abduction, and rape and was sentenced to seventy years' imprisonment with fifty years suspended for life, conditioned on indefinite probation. In 1991, while incarcerated, petitioner committed and was convicted of forcible sodomy and was sentenced to ten years' imprisonment. In 2014, after release from custody of the Virginia Department of Corrections, petitioner was civilly committed in the Circuit Court of Southampton County as a sexually violent predator (SVP) and committed to the custody of the Department of Behavioral Health and Developmental Services (DBHDS).

Petitioner was granted conditional release from DBHDS and also began supervised probation pursuant to his 1990 convictions in September 2017. Petitioner was supervised by Angelena M. Bertolini-Alley (Bertolini), a sex offender specialist probation and parole officer who monitored both his probation and his conditional release. *See* Code § 37.2-912 ('[I]f the respondent is on parole or probation, the respondent's parole or probation officer shall implement the court's conditional release orders'). As part of petitioner's conditional release, he was required to 'comply with all provisions of [his] Conditional Release Plan,' including that he be subject to electronic monitoring by means of a GPS tracking device, participate in and successfully complete sexual offender assessment and treatment and substance abuse treatment, be truthful and cooperative with his supervising officer and follow her instructions, not have any unauthorized possession or use of any electronic device capable of accessing the internet without the permission of his supervising officer or the court and, if authorized to use the internet, install monitoring software, 'not purchase, look at, nor possess any sexually explicit, pornographic, or suggestive material, though any medium of print, photo, or any form of electronic format,' not establish or visit any electronic social networking sites, 'attend mental health treatment with a licensed mental health provided who is aware of his offending history and approved by his supervising officer,' take his prescribed medication, obtain approval from his supervising officer for any employment, not work in any place where he would have access to minors or other vulnerable persons unless approved by his supervising officer, and fully inform his employers, relatives, and other persons in his social circle, in the presence of his supervising officer, 'of his history of sexual aggression.'

ECF No. 1, attach. 3 at 1–2. On March 19, 2018, Probation Officer Bertolini filed a major violation report seeking an emergency custody order ("ECO"), which was granted. ECF No. 10, attach. 2 at 1–3. Therein, Probation Officer Bertolini asserted that Petitioner violated condition number three requiring him to seek and maintain employment, and condition number six requiring Petitioner to follow the instructions of his probation officer and to be truthful and cooperative. ECF No. 10, attach. 3 at 2–3. On November 27, 2018, the Circuit Court of the County of

2

Southampton (the "Trial Court") held a hearing "to determine whether the Respondent violated

the terms of his conditional release as a sexually violent predator and if so, whether the Respondent

remains suitable for conditional release under the Code of Virginia § 37.2-913" (the "Hearing").

ECF No. 10, attach. 4 at 1.  After reviewing the evidence and Hearing testimony, the Trial Court

found by clear and convincing evidence that Petitioner violated the conditions of his release, and

that his violation of his conditions rendered him no longer suitable for conditional release.  *Id.*

Petitioner appealed the Trial Court's Order to the Supreme Court of Virginia on February

25, 2019. ECF No. 10, attach. 5.  Therein, Petitioner raised three assignments of error:

> 1. The Trial Court erred because the evidence was insufficient, as a matter of law
> under a clear and convincing evidentiary standard, to find Respondent in violation
> of the rules of his conditional release and to recommit him to the Virginia Center
> for Behavioral Rehabilitation.
>
> 2. The Trial Court erred in qualifying the probation officer as an expert and
> allowing the probation officer to give an opinion as an expert witness on one of the
> ultimate issues.
>
> 3. The Trial Court erred in not considering Respondent's motion to quash on the
> merits.

*Id.* at 4.  The Supreme Court of Virginia summarily refused the appeal on July 1, 2019, stating

"[u]pon review of the record in this case and consideration of the argument submitted in support

of and in opposition to the granting of an appeal, the Court is of opinion there is no reversible error

in the judgment complained of." *Saunders v. Commonwealth*, Record No. 190246 (Va. July 1,

2019).

Petitioner then filed a petition for a writ of habeas corpus in the Supreme Court of Virginia,

raising the following claims:

> (a) Violations of constitutional prohibitions against ex post facto laws, cruel and
> unusual punishment, double jeopardy, equal protection, and due process.

(b) Ineffective assistance of counsel during his 2014 commitment proceedings because (i) Counsel failed to inform him of the consequences of admitting to being a sexually violent predator; (ii) Counsel advised him that the Commonwealth would agree to his conditional release if he admitted to being a sexually violent predator (iii) Counsel failed to research and advise petitioner on the factors the Commonwealth had to prove before he could be found to be an SVP (iv) Counsel failed to "establish any objective of representation" for his defense.

(c) The conditions of conditional release violates his First and Fourteenth Amendment Rights because they limit his access to the internet

(d)(i) Insufficient evidence to prove he met the criteria for civil commitment as a sexually violent predator (ii) Insufficient evidence to prove he should be recommitted as a sexually violent predator

(e)(i) The Circuit Court erred in failing to consider the merits of petitioner's motion to quash the emergency commitment order (ii) Ineffective assistance of counsel because counsel only raised three issues in the petition for appeal from petitioner's recommitment.

(f) Prosecutorial misconduct because the Commonwealth did not have sufficient evidence to revoke his conditional release but did so anyway in violation of his constitutional rights, and the Commonwealth failed to correct false testimony from his probation officer

(g) Insufficient evidence to find he violated the conditions of his conditional release

(h)(i) Ineffective assistance of counsel because "counsel failed to abide by petitioner's decisions concerning the objectives of representation" because counsel refused to argue his pro se motion to quash on the grounds that he could not make the arguments petitioner wanted him to in good faith.

(h)(ii) Ineffective assistance of counsel because counsel failed to investigate the Commonwealth's allegation that petitioner failed to follow Bertolini's instructions to apply for and follow up with job opportunities,

(h)(iii) Ineffective assistance of counsel because counsel failed to challenge the Commonwealth's evidence that petitioner failed to follow up with mental health services

(h)(iv) Ineffective assistance of counsel because counsel failed to investigate the Commonwealth's allegation that petitioner removed the Covenant Eyes program without notifying Bertolini.

(h)(v) Ineffective assistance of counsel because counsel failed to investigate the Commonwealth's allegation that the petitioner accessed Facebook in March 2018.

4

(h)(vi) Ineffective assistance of counsel because counsel failed to investigate the Commonwealth's allegation that petitioner remained an SVP in need of treatment.

ECF No. 1, attach. 3 at 2–14. The Supreme Court of Virginia reviewed Petitioner's claims and found that claim (a), and claim (f) were barred by *Slayton v. Parrigan* because they were non-jurisdictional issues that could have been raised at trial and on direct appeal; claim (b), claim (c), and the portion of claim (d) alleging the evidence was insufficient to prove he met the criteria for civil commitment as a sexually violent predator were all time-barred pursuant to Virginia Code § 8.04-654(A)(2); the portion of claim (d) alleging the evidence was insufficient to prove he should be recommitted as a sexually violent predator, claim (e), claim (g) were barred by *Brooks v. Peyton* because a petition for writ of habeas corpus may not be employed as a substitute for appeal; claim (e) alleging ineffective assistance of counsel on direct appeal, and each portion of claim (h), all did not satisfy either the performance or prejudice prong announced in *Strickland v. Washington*. *Id.* Based on these findings, the Supreme Court of Virginia dismissed the petition. *Id.* at 14.

Petitioner filed the instant Petition on October 18, 2021, alleging the following claims:

Ground One: Insufficient evidence to prove violation of conditional release, Fourteenth Amendment violations. ECF No. 1 at 5; ECF No. 1, attach. 2 at 1–11.

Ground Two: Fourteenth Amendment violation: Constitutional error has resulted in conviction of one who is actually innocent. ECF No. 1 at 7; ECF No. 1, attach. 2 at 11–17.

Ground Three: Ex Post Facto and Double Jeopardy violations. ECF No. 1 at 8; ECF No. 1, attach. 2 at 17–30.

Ground Four: Prosecutorial Misconduct in violation of the 5th and 14th Amendments. ECF No. 1 at 10, 17–18; ECF No. 1, attach. 1–13.

Ground Five: Failure to consider the merits of Petitioner's motion to quash the ECO. ECF No. 1, attach. 1 at 13–15.

Ground Six: Ineffective assistance of counsel because: (i) counsel failed to abide by Petitioner's decisions concerning the objectives of representation; (ii) counsel prepared no defense for Petitioner's ECO hearing; (iii) counsel relied on perceived

5

weakness in AG's case and/or relied on the Trial Court to grant a motion to withdraw; (iv) counsel failed to educate himself and engage in the study in the area of legal practice for which he was appointed to engage in; (v) counsel failed to competently inquire into and analyze the factual and legal elements of Petitioner's case by interview Petitioner to ascertain what the objectives of representation should be regarding subpoenaing documents, summoning witnesses or to otherwise apply adversarial testing to the AG's case. ECF No. 1, attach. 1 at 16–30.

Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and *Roseboro* Notice. ECF Nos. 9–11. Petitioner filed a response to the motion to dismiss. ECF No. 13. Therefore, the Petitions and Motion to Dismiss are now ripe for recommended disposition.

## II. DISCUSSION

### A. Exhaustion, Procedural Default, and Federally Cognizable Habeas Claims

Before considering the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted the claims asserted in the Petition, and whether Petitioner has procedurally defaulted on his claims.[1] Additionally, the Court will not consider the merits of a petitioner's claims which seek relief not cognizable upon federal habeas review.

*1. Exhaustion*

Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas

---

[1] Respondent does not argue that Petitioner's claims are untimely pursuant to 28 U.S.C. § 2244(d).

petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 5 26 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). "Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition." *Moody v. Dir., Virginia Dep't of Corr.*, No. 1:14CV1581 (GBL/TCB), 2016 WL 927184, at *3 (E.D. Va. Mar. 3, 2016), appeal dismissed, 669 F. App'x 160 (4th Cir. 2016) (citing *Duncan v. Henry*, 513 U.S. 364 (1995)).

### 2. *Procedural Default.*

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). As the Fourth Circuit has explained, the procedural default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). *See also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of

justice.") (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998); citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (internal citations omitted). As the Supreme Court has observed, "[t]he procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). When considering a petition for federal habeas corpus, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (explaining that "an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

Additionally, a petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Under these circumstances, the claim is considered simultaneously exhausted and procedurally defaulted so long as "it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Importantly, however, if "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," a federal court may not review the simultaneously exhausted and procedurally defaulted claim. *Id.* (quoting *Gray*, 518 U.S. at 162).

8

Absent a showing of cause for the default and prejudice or a fundamental miscarriage of justice (such as actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (explaining that "a petitioner may nonetheless overcome procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The Fourth Circuit has held that "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). *See also Davila v. Davis*, 137 S. Ct. 2058, 2065, 198 L. Ed. 2d 603 (2017) ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)). "Importantly, a court need not consider the issue of prejudice in the absence of cause." *Booker v. Clarke*, No. 1:15CV781, 2016 WL 4718951, at *5 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), cert. denied, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996)).

### 3. *Cognizable Claims*

"A state prisoner is entitled to relief under § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Billotti v. Legursky*, 975 F.2d 113, 119 (4th Cir. 1992) (quoting *Engle v. Isaac*, 456 U.S. 107, 109 (1982)). Thus, questions of state law that do not implicate federal rights are not cognizable on federal habeas review. *Id.* (citing *Inge v. Procunier*, 758 F.2d 1010, 1014 (4th Cir. 1985). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (holding a petitioner's allegation that the state court lacked jurisdiction rested upon state law and therefore was not cognizable on federal habeas review); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors involved with state post-conviction proceedings are not cognizable on federal habeas review).

### 4. *Grounds 2, 3, and 4 are simultaneously exhausted and procedurally defaulted on adequate and independent state-law grounds.*

In Ground 2, Petitioner alleges his Fourteenth Amendment rights were violated because he is actually innocent, and contends that newly discovered evidence—a transcript of his August 10, 2018 criminal probation violation hearing—demonstrates his innocence. ECF No. 1 at 7; ECF No. 1, attach. 2 at 11–17. Petitioner did not present Ground 2 to the Supreme Court of Virginia either on direct appeal or in his state habeas petition. If Petitioner were to present Ground 2 in a new state habeas petition to the Supreme Court of Virginia, it would be procedurally barred as untimely under Virginia Code § 8.01-654(A)(2). Virginia Code § 8.01-654(A)(2) constitutes an adequate and independent state-law ground for a decision. *Sparrow*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006) (Va. Code § 8.01-654(A)(2) is an independent and adequate state procedural rule).

Accordingly, Ground 2 is simultaneously exhausted and procedurally defaulted for purposes of federal habeas review.

In Ground 3, Petitioner alleges violations of the Ex Post Facto clause and the Double Jeopardy clause in the Fifth and Fourteenth Amendments because "Virginia Code Section 37.2-912 constitutes an added or later punishment to a previously imposed punishment and transforms what was intended to be a civil remedy to sexually deviant behavior into a punitive outcome either in purpose or effect." ECF No. 1 at 8; *see also* ECF No. 1, attach. 2 at 17–30. Petitioner presented Ground 3 to the Supreme Court of Virginia in his state habeas petition as claim (a). ECF No. 1, attach. 3 at 2. However, the Supreme Court of Virginia dismissed this claim, finding it was barred pursuant to *Slayton v. Parrigan* because it was a non-jurisdictional issue that could have been raised at trial and on direct appeal, and thus was not cognizable in state habeas relief. ECF No. 1, attach. 3 at 2 (citing *Slayton v. Parrigan*, 215 Va. 27, 29 (1974)). The rule in *Slayton* constitutes an adequate and independent state-law ground that precludes federal review. *Lewis v. Wheeler*, 609 F.3d 291, 309 (4th Cir. 2010) (recognizing that *Slayton* qualifies as an adequate and independent state law ground). Accordingly, Ground 3 is simultaneously exhausted and procedurally defaulted for purposes of federal habeas review.

In Ground 4, Petitioner alleges prosecutorial misconduct in violation of the 5th and 14th Amendments because the prosecutor charged petitioner with violations of his release when he knew they were not supported by probable cause. ECF No. 1 at 10, 17–18; ECF No. 1, attach. 1–13. Petitioner presented Ground 4 to the Supreme Court of Virginia in his state habeas petition as claim (f). ECF No 1, attach. 3 at 3–4. The Supreme Court of Virginia dismissed this claim finding it was barred pursuant to *Slayton v. Parrigan*. *Id.* As explained above, the rule in *Slayton* constitutes an adequate and independent state-law ground that precludes federal review. *Lewis*,

609 F.3d at 309. Accordingly, Ground 4 is simultaneously exhausted and procedurally defaulted for purposes of federal habeas review.

As noted, Petitioner may overcome procedural default by "showing [] cause and prejudice or a fundamental miscarriage of justice due to [his] actual innocence." *Silk*, 2009 WL 742552, at *3 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998), and *Harris v. Reed*, 489 U.S. 255, 262 (1989)). Petitioner argues that newly discovered evidence—a transcript of his August 10, 2018 criminal probation violation hearing—demonstrates his innocence ECF No. 1 at 7; ECF No. 1, attach. 2 at 11–17. Specifically, Petitioner contends that transcript demonstrates that his conviction was obtained based on perjured testimony because Probation Officer Bertolini testified in another case as to the same matter and gave conflicting testimony. ECF No. 1, attach. 2 at 13–17.

"[C]ause" refers to "some objective factor external to the defense [that] impeded counsel's [or the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner does not argue any reason why he did not raise his defaulted claims on direct appeal or in his state habeas petition, or evidence demonstrating that some objective factor impeded his ability to comply with the state's procedural rules. Petitioner offers no explanation why he could not have presented evidence from the August 10, 2018 criminal probation violation hearing at his Hearing on November 27, 2018. To the extent Petitioner makes any vague reference that his counsel's ineffectiveness demonstrates cause, that argument is without merit. Petitioner represented himself at the Hearing (*see* n.2, *infra*), and thus any obligation to raise arguments that the August 10, 2018 criminal probation violation hearing demonstrated perjured testimony was incumbent upon Petitioner, not his former counsel. Moreover, the record demonstrates that Petitioner did question

12

Probation Office Bertolini about her testimony at the August 10, 2018 criminal probation violation hearing. ECF No. 10, attach. 6 at 56–57.  Thus, Petitioner has not alleged any objective factor external to the defense that impeded Petitioner's efforts to comply with a Virginia procedural rule.

To demonstrate actual innocence, the Petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *United States v. Jones*, 758 F.3d 579, 584 (4th Cir. 2014) (quoting *Schlup v. Delo*, 513 U.S. 298, 327(1995)). "[T]he petitioner must satisfy a 'rigorous' burden by 'support[ing] his allegations of constitutional error with new reliable evidence.'" *Smith v. Warden*, 7:17cv72, 2017 U.S. Dist. LEXIS 106192, at *4 (W.D. Va. June 26, 2018) (second alteration in original) (quoting *Schlup*, 513 U.S. at 324).

First, as explained above, the transcript Petitioner relies on from his August 10, 2018 criminal probation violation hearing is not "newly discovered evidence" because it occurred before Petitioner's SVP Hearing on November 27, 2018.  *See* ECF No. 10, attach. 4.  Petitioner does not offer any explanation why the Court should consider this transcript as new evidence if Petitioner had the evidence within the transcript prior to his SVP Hearing.  Second, Petitioner merely offers his own assertion and inaccurately characterized testimony to allege that "new evidence" shows he is actually innocent. ECF No. 1, attach. 2 at 12–17.  Such evidence does not satisfy Petitioner's "rigorous burden" of demonstrating constitutional error with *new* evidence, or demonstrate by clear and convincing evidence that no reasonable juror would have convicted him in light of the criminal transcript. *See Smith*, 2017 U.S. Dist. LEXIS 10692, at *4.  Absent sufficient evidence supporting actual innocence, Petitioner cannot demonstrate a fundamental miscarriage of justice. *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999).

Accordingly, the undersigned **FINDS** that Grounds 2, 3, and 4, are simultaneously exhausted and procedurally defaulted, and should be dismissed.

5.  *Grounds 5 and 6 are not cognizable in federal habeas review.*

In Ground 5, Petitioner argues that the failure of the Trial Court to consider the merits of

Petitioner's motion to quash the ECO. ECF No. 1, attach. 1 at 13–15. Petitioner generally argues

that the failure of the Court to consider the merits of his motion was an abuse of discretion and

violated his due process rights. Ground 5 alleges a violation of state law, and Petitioner does not

explain how the failure of the Trial Court to consider the motion to quash implicates his federal

rights. Petitioner merely states that the Trial Court's failure to consider the motion to quash

violated his due process rights. Petitioner cannot simply add due process language to a state law

claim and transform it a constitutional question. *Shelman v. Whitten*, 770 F. App'x 423, 424 (10th

Cir. 2019) ("a habeas applicant cannot transform a state law claim into a federal one merely by

attaching a due process label."); *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (finding a

petitioner cannot "transform a state-law issue into a federal one merely by asserting a violation of

due process."); *Moore v. Chrones*, 687 F. Supp. 2d 1005, 1040 n.27 (C.D. Cal. 2009) ("Petitioner's

bare reference to the Fourth and Fourteenth Amendments at the tail end of Ground Eight does not

transform Petitioner's state law claim into a viable federal claim"). Accordingly, the undersigned

**FINDS** that Ground 5 is not cognizable in federal habeas review.

In Ground 6, Petitioner alleges numerous claims of ineffective assistance of counsel. ECF

No. 1, attach. 1 at 16–30. As previously explained by this Court, "The Virginia Supreme Court

has held that 'the subject of the involuntary civil commitment process has the right to counsel at

all significant stages of the judicial proceedings, including the appellate process." *Ramsey v.*

*Runion*, No. 2:11cv396, 2012 WL 3883378, at *4 (E.D. Va. Sept. 5, 2012) (citing *Jenkins v. Dir.*

*of the Va. Ctr. for Behavioral Rehab.*, 624 S.E.2d 453, 460 (Va. 2006), *appeal dismissed*, 488 F.

App'x 759 (4th Cir. 2012), *cert. denied*, 568 U.S. 1239 (2013). However, there is no Sixth

Amendment right to counsel in civil commitment proceedings. *Id.* (citing *Vitek v. Jones*, 445 U.S. 480, 496 (1980) (plurality opinion); *id.* at 497–500 (Powell, J., concurring); *United States v. Baker*, 45 F.3d 837, 843 & n.3 (4th Cir. 1995) (acknowledging that due process does not guarantee an individual in a civil commitment proceeding the right to counsel) (citing *Vitek*, 445 U.S. at 494–96) (plurality opinion) (other citations omitted)). Ground 6 is not cognizable on federal habeas review because "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Because Petitioner had no federally cognizable right to counsel during his commitment proceeding, he has no claim for federal habeas relief.[2] Accordingly, the undersigned **FINDS** that Ground 6 is not cognizable in federal habeas review.

Having conducted a preliminary inquiry to determine the extent to which the Court can review the merits of the Petition, the Court now turns to the merits of the remaining claim in the Petition—Ground 1.

### B. Standard of Review on Merits of Ground 1: 28 U.S.C. §2254(d)

Habeas relief is warranted only if Petitioner can demonstrate that the adjudication of each of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[2] The Court notes that the record further demonstrates that before Petitioner's Hearing began, Petitioner requested his attorney withdraw from the case on the grounds that his attorney would not argue a motion to quash the ECO that Petitioner drafted. ECF No. 10, attach. 6 at 4–5. His counsel advised him that he could not in good faith argue a frivolous motion, but if Petitioner insisted, then Petitioner could ask the court to have his attorney withdraw. *Id.* After confirming that Petitioner wished to proceed in arguing his motion, the Court allowed Petitioner's attorney to withdraw. *Id.* at 9. The Trial Judge then asked Petitioner if he would like the Court to appoint a different attorney because Petitioner was entitled to have counsel. *Id.* Petitioner declined. *Id.* at 9–13. Petitioner represented himself throughout the Hearing. *Id.*

Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA[3], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.") (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121 (2011).

In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. 362, 404–05 (2000). A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405–06. This Court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). *See also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is

---

[3] Antiterrorism and Effective Death Penalty Act of 1996.

objectively unreasonable."). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). *See also Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard in § 2254(d)). Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

C. Facts and Findings of Law on Remaining Claim: Ground One

In Ground One, Petitioner alleges that the evidence presented at his Hearing was insufficient to prove a violation of his conditional release. ECF No. 1 at 5; ECF No. 1, attach. 2 at 1–11. Petitioner raised Ground One on direct appeal as his first assignment of error, and the

Supreme Court of Virginia summarily dismissed his petition for appeal, finding no reversible error.[4] *Saunders v. Commonwealth*, Record No. 190246 (Va. July 1, 2019).

The Court looks to the "last reasoned decision of a state court addressing the claim" to assess a state prisoner's habeas claim. *Dodson v. Ballard*, 800 F. App'x 171, 176 (4th Cir. 2020) (citations omitted). However, because the Supreme Court of Virginia's decision was a summary dismissal, there is no "last reasoned state-court judgment" for the Court to consider. Nonetheless the Supreme Court of Virginia's decision is presumed to be a decision on the merits, *Valentino v. Clarke*, 972 F.3d 560, 576 (4th Cir. 2020), and "must be reviewed under the deferential provisions of § 2254(d)(1), *Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000). Because the Supreme Court of Virginia did not explain its rationale behind rejecting this claim, the Court must independently review the record and applicable law. *Bell*, 236 F.3d at 163 ("we must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.") (*quoting Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

In Ground One, Petitioner specifically alleges that at his Hearing, there was no clear and convincing evidence that: (1) Petitioner intentionally failed to comply with Probation Officer Bertolini's instruction to apply for and follow up with job opportunities; (2) Petitioner failed to follow her instruction to follow up with mental health services at the Daily Planet; (3) Petitioner removed Covenant Eyes program from his laptop without informing her; (4) there existed a report

---

[4] Petitioner also raised Ground One in his state habeas petition as claim (g), and the Supreme Court of Virginia held that claim was barred pursuant to *Brooks v. Peyton*, 210 Va. 318, 321 (1969) because a petition for writ of habeas corpus may not be employed as a substitute for an appeal. ECF No. 1, attach. 3 at 4.

from Covenant Eyes demonstrating Petitioner accessed Facebook March 4th and March 5th 2018 or had unauthorized access to YouTube; and (5) Petitioner remained a sexually violent predator in need of in-patient treatment. ECF No. 1, attach. 2 at 1–2. The Respondent contends that the Supreme Court of Virginia's decision regarding the sufficiency of the evidence was reasonable and fully supported by the evidence. ECF No. 10 at 15–18.

It is well-established that "[t]he standard of review for an insufficient evidence claim is deferential to the finder of facts; it is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.'" *Rodgers v. Angelone*, 113 F. Supp. 2d 922, 934 (E.D. Va. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979); *McMillan v. Pennsylvania*, 477 U.S. 79 (1986); *Inge v. Procunier*, 758 F.2d 1010 (4th Cir. 1985) *cert. denied*, 474 U.S. 833 (1985); *Goldsmith v. Witkowski*, 981 F.2d 697, 701 (4th Cir. 1992), *cert. denied*, 509 U.S. 913 (1993)) (italics in original).

Pursuant to Virginia Code 37.2-913(D):

[i]f upon hearing the evidence, the court finds that the respondent on conditional release has violated the conditions of his release and that the violation of conditions was sufficient to render him no longer suitable for conditional release, the court shall revoke his conditional release and order him returned to the custody of the Commissioner for secure inpatient treatment.

Va. Code § 37.2-913(D). To determine whether the respondent should be conditionally released, a judge must determine that each of the following criteria is met:

(i) he does not need secure inpatient treatment but needs outpatient treatment or monitoring to prevent his condition from deteriorating to a degree that he would need secure inpatient treatment;
(ii) appropriate outpatient supervision and treatment are reasonably available;
(iii) there is significant reason to believe that the respondent, if conditionally released, would comply with the conditions specified; and
(iv) conditional release will not present an undue risk to public safety.

*Lotz v. Commonwealth*, 277 Va. 345, 349 (2009) (citing Va. Code § 37.2-912(A)). Thus, at the Hearing, the Commonwealth had to prove by clear and convincing evidence that at least one of those criteria cannot be met. *Id.* If the Commonwealth can demonstrate a prima facie case through clear and convincing evidence that there is no suitable less restrictive alternative to involuntary commitment, the respondent has the burden to produce evidence to rebut the Commonwealth's case by showing that all four criteria are met. *Gibson v. Commonwealth*, 287 Va. 311, 320 (2014) (citing *McCloud v. Commonwealth*, 269 Va. 242, 261 (2005)).

After reviewing the conditional release reconsideration report, testimony from Probation Officer Bertolini, Dr. Glenn Rex Miller, and Petitioner, the Trial Court found that Petitioner violated the conditions of his release by failing to find employment in the manner he was instructed to, and failed to follow the Probation Officer's instructions by using the internet in an unauthorized manner and removing the Covenant Eyes program. ECF No. 10, attach. 6 at 128–30. The Trial Court further found that based on Dr. Miller's testimony, Petitioner met the requirements of SVP status and is not amendable to conditional release. *Id.* at 131–32.

Petitioner first contends that the evidence was insufficient to find that he failed to comply with Probation Officer Bertolini's instruction to apply for and follow up with job opportunities. ECF No. 1, attach. 2 at 1–4. During the Hearing, Probation Officer Bertolini testified that Petitioner applied for and received a job at 7-Eleven convenience store in late October 2017. ECF No. 10, attach. 6 at 30. However, Petitioner did not notify her before starting the job so she could inform Petitioner's boss about his status as an SVP, as he was required to do. *Id.* at 30–31. While on the job, Petitioner had multiple GPS violations because he would do whatever he wanted in terms of his schedule, and would be at work when he was supposed to be home and vice versa. *Id.* at 30–33. Petitioner told Probation Officer Bertolini that his whereabouts were not her concern as

long as he was in city limits. *Id.* at 33–34. On December 20, 2018, Petitioner walked off the job because he felt disrespected about his pay. *Id.* Probation Officer Bertolini then testified that Petitioner was applying to jobs online which he was permitted to do, and that she would monitor his email account to see the jobs he applied to. *Id.* at 30, 34. She explained that Petitioner would apply to jobs that he clearly did not qualify for or that were not appropriate, and would not follow through with the jobs that were appropriate. *Id.* at 34. Probation Officer Bertolini said that Petitioner did this so that he could do the bare minimum to meet his requirement that he apply for a certain number of jobs per week. *Id.*

Given the deferential standard in which the Court utilizes to determine whether there is sufficient evidence, any rational trier of fact could find that Petitioner failed to comply with his probation officer's instructions to apply for and follow up on jobs. *Rodgers*, 113 F. Supp. 2d at 934. Probation Officer Bertolini was qualified as an expert witness in the field of monitoring sexually violation predators, and her testimony was sufficient evidence to find that Petitioner failed to follow his probation officer's instructions to apply for and follow up on job leads. Accordingly, The Trial Court's finding that that Petitioner failed to comply with his probation officer's instructions to apply for and follow up on jobs was not unreasonable or contrary to federal law.

Second, Petitioner contends there was insufficient evidence to show that Petitioner failed to follow Probation Officer Bertolini instruction to follow up with mental health services at the Daily Planet. ECF No. 1, attach. 2 at 4. The Court notes that the Trial Court did not rest its finding on this allegation. *See* ECF No. 10, attach. 6 at 125–32. However, even if it did, sufficient evidence would support that conclusion. Probation Officer Bertolini testified that Petitioner called Daily Planet a few times, but never went there. *Id.* at 29, 46. According to Probation Officer Bertolini, if Petitioner did go (which, Petitioner claims he did), his visit was likely only an intake

visit. *Id.* at 47. She also testified that Petitioner lied about arriving at an appointment, by stating nobody opened the front door, but his GPS monitoring confirmed he was not at the location of the appointment. *Id.* at 37–38. Though Petitioner extensively questioned Probation Officer Bertolini about whether he was receiving treatment at Daily Planet, her answers did not demonstrate any striking inconsistencies, or that she did not believe that he did not receive treatment at Daily Planet. *Id.* at 46–52. Given the deferential standard, such evidence would be sufficient to find that Petitioner failed to follow up with Probation Officer Bertolini's instruction to follow up with mental health services.

Third, Petitioner contends there was insufficient evidence to show he removed the Covenant Eyes program from his computer. ECF No. 1, attach. 2 at 6–7. At the Hearing, Probation Officer Bertolini testified that Petitioner was permitted to have a computer as long as he installed the program "Covenant Eyes"—an internet monitoring service that sends a weekly report to the probation officer about the Petitioner's internet activity. ECF No. 10, attach. 6 at 38–39. Probation Officer Bertolini received an email stating that the program was no longer installed on Petitioner's computer, and Petitioner did not tell her that he removed the program. *Id.* at 41. Additionally, Dr. Miller testified that during his interview with Petitioner, Petitioner admitted removing Covenant Eyes from his computer because he wanted to and because the State could not tell him how to spend his money. *Id.* at 97–98. Most importantly, at the Hearing, Petitioner testified "I took the Covenant Eyes program off the computer because I enrolled in college." *Id.* at 112. Thus, the evidence at the Hearing showed that Probation Officer Bertolini received an email that Petitioner removed Covenant Eyes from his computer, Petitioner admitted to Dr. Miller that he removed Covenant Eyes from his computer, and Petitioner testified at the Hearing that he removed Covenant Eyes from his computer. Under these circumstances, any rational trier of fact could find

22

that Petitioner removed the Covenant Eyes program from his computer. Accordingly, the Trial Court's finding that Petitioner failed to follow the probation officer's instructions and to be truthful and cooperative by removing the Covenant Eyes program from his computer was not unreasonable or contrary to federal law.

Fourth, Petitioner argues that the evidence was insufficient to prove that he accessed Facebook on March 4 and 5, 2018. ECF No. 1, attach. 2 at 7–9. At the Hearing, Probation Officer Bertolini testified that she received a Covenant Eyes report on March 7, 2018, that showed Petitioner searched on Facebook on March 4 and March 5 of 2018. ECF No. 10, attach. 6 at 39–40, 75–77. When confronted by Probation Officer Bertolini, Petitioner became very defensive, and admitted that he had used an app which allowed him to watch free movies (which, was also a violation of his conditions of release). *Id.* at 40–42. Probation Officer Bertolini set up an examination to show whether Petitioner was telling the truth about his Facebook access, but Petitioner refused to take it. *Id.* at 44. Notably, on the same date Probation Officer Bertolini confronted Petitioner about accessing Facebook, he removed the Covenant Eyes program from his computer. *Id.* at 75–76. Petitioner also testified that he used YouTube to watch an instructional video, and downloaded an app for watching free movies. *Id.* at 115–16. Given the deferential standard that the Court utilizes to determine whether there is sufficient evidence, any rational trier of fact could find that Petitioner accessed Facebook and YouTube.[5] Probation Officer Bertolini

---

[5] To the extent Petitioner argues that the major violation report alleging the Covenant Eyes report demonstrated he accessed Facebook violates his right to confrontation, (ECF No. 1, attach. 2 at 8), Petitioner's claim is without merit. "The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Bullock v. Clark*, No. 3:19cv774, 2020 WL 2558232, at *5 (E.D. Va. May 20, 2020) (quoting *United States v. Dargan*, 738 F.3d 643, 650 (4th Cir. 2013) (internal quotations omitted)). Despite Petitioner's contentions that either the major violation report or the Covenant Eyes report are "testimonial," a report is "neither a testimonial statement nor a witness at trial." *See id.*

testified that the report showed that Petitioner accessed Facebook, and when confronted about that access, Petitioner removed Covenant Eyes from his computer. Accordingly, the Trial Court's finding that Petitioner failed to follow the probation officer's instructions by accessing Facebook and YouTube was not unreasonable or contrary to federal law.

Finally, Petitioner contends there was insufficient evidence to show that Petitioner remained an SVP. ECF No. 1, attach. 2 at 9–11. The Commonwealth called Dr. Miller to testify at the Hearing. ECF No. 10, attach. 6 at 79. Dr. Miller is a licensed psychologist for the last fifteen years, ten of which specialized in sexually violent predators. *Id.* at 79–81. Dr. Miller conducted a SVP evaluation of Petitioner at the request of DBHDS at the Richmond City Jail after reviewing all records related to Petitioner's case. *Id.* at 81–83. Dr. Miller testified that Plaintiff's diagnoses would affect Petitioner's emotional and volitional capacities, and either singularly or in combination would likely lead to Petitioner offending in a sexually violent way. *Id.* at 86. Dr. Miller specifically expounded on Plaintiff's diagnoses of anti-social personality disorder. *Id.* at 87–88. He explained that anti-social personality disorder affects a person's ability to be successful, navigate the community, have good social relationships, and maintain employment. *Id.* at 87–88. According to Dr. Miller, someone with anti-social personality disorder tends to be reckless, have a low frustration tolerance, lack remorse, not learn from consequences, have difficulty with authority, and are generally reckless with their behavior and tend to be deceptive and manipulative. *Id.* at 88. Dr. Miller then explained that Plaintiff also suffers from "other specified paraphilic disorder, non-consent," which means that the person engaged in some type of nonconsenting sexual act for at least a six-month period of time. *Id.* Dr. Miller explained the combination of anti-social personality disorder and paraphilic disorder is more likely to be a highest risk offender. *Id.*

24

Dr. Miller recounted his interactions with Petitioner, and testified that he found Petitioner's attitude towards him to be consistent with other reports in the record. *Id.* at 89. Petitioner was entitled, grandiose, argumentative, demonstrated difficulty accepting responsibility, and engaged in dramatic gestures. *Id.* at 89–91. For example, Petitioner would grab paper and begin writing notes when he did not like what Dr. Miller was saying, walked off the job at 7-Eleven because the woman he was supposed to train made more money and had more experience than him, and told his probation officer that he would rather eat a gun when he got frustrated with her. *Id.* at 90–93. Dr. Miller testified that those behaviors were consistent with anti-social personality disorder and demonstrate that he has difficulty with authority and low frustration tolerance. *Id.* at 92. Dr. Miller testified that when Petitioner does not get what he wants or is held with a limit, he tends to do something dramatic, and such behavior demonstrates his need to control situations. *Id.* at 94.

As for Petitioner's treatment, Dr. Miller testified that Petitioner was resistant to mental health medication, and appeared to attempt to get himself off medication as soon as he was released. *Id.* at 94–96. Petitioner stated that a doctor told him to stop taking medication, but never provided official documentation to that effect. *Id.* at 96. Petitioner told Dr. Miller he does not believe he needs sex offender treatment or any type of treatment. *Id.* at 99.

In discussing his original two rape offenses, Petitioner told Dr. Miller he committed those crimes out of anger in combination with substance usage. *Id.* at 100. Dr. Miller stated that Petitioner told him he sexually assaulted another inmate out of peer pressure and wanting to fit in. *Id.* Petitioner also was alleged to engage in sexually suggestive activity—such as placing a note in a correctional officer's door indicating a desire to start a relationship and making a sexually suggestive statement to a nurse at his facility. *Id.* at 100, 104. Dr. Miller opined that Petitioner needs treatment. *Id.*

25

In evaluating the factors to determine whether release is appropriate pursuant to Virinia Code section 37.2-912, Dr. Miller opined that pursuant to the first factor, Petitioner requires secured inpatient treatment because he lacks insight into his motivations, behaviors, does not see his disconnect with others, has significant issues with anger, and low frustration tolerance—all of which contribute to his sexual offending. *Id.* at 101. As for the second factor, Dr. Miller opined that he does not believe there is any significant reason to believe that Petitioner will comply with conditions of release because he lacks insight into his behavior, he feels that he has a right to do things, and he argues with persons in authority roles about his constitutional rights, despite knowing the conditions of conditional release. *Id.* at 101–02. As for the third factor, Dr. Miller opined that Petitioner's release would cause an undue risk to public safety, and that conditional release would not be appropriate at this time. *Id.* at 103.

Given the deferential standard that the Court utilizes to determine whether there is sufficient evidence, any rational trier of fact could find that Petitioner remained an SVP in need of treatment. Dr. Miller, an expert in evaluating sexually violent predators, concluded that in light of Petitioner's behavior, diagnoses, and treatment records, he would find that Petitioner required secure inpatient treatment, that there was no reason to believe Petitioner would comply with conditions of release, that Petitioner's release would cause an undue risk to public safety, and that Petitioner should not be conditionally released. Dr. Miller relied on Plaintiff's entire record including treatment notes, his own evaluation of Plaintiff, and Plaintiff's recorded behavior to reach this conclusion, and Dr. Miller's testimony demonstrated substantial familiarity with that evidence. Accordingly, the Trial Court's finding that Petitioner remained an SVP was not unreasonable or contrary to federal law.

26

In sum, the Court **FINDS** that the Trial Court's determinations regarding the sufficiency of the evidence in Ground One were neither unreasonable, nor contrary to federal law.

## IV. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 9, be **GRANTED**, and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## V. OUTSTANDING NON-DISPOSITIVE MOTION

On March 4, 2022, Petitioner filed a Motion for an Extension of Time to file a response to Respondent's Motion to Dismiss. ECF No. 12. Petitioner's response to the motion to dismiss was due on March 10, 2022. Petitioner timely filed his response to the Motion to Dismiss on that date. ECF No. 13. Accordingly, Petitioner's Motion for an Extension of Time, ECF No. 12, is **DISMISSED as MOOT.** The Court considered Petitioner's response to the Motion to Dismiss while reviewing the Petition.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is

made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for Respondent.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 18, 2022